UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DONALD G. RAYNOR, Jr.,<br>      Plaintiff,<br><br>      v.<br><br>INGRID FEDER, et al.,<br>      Defendants. | No. 3:20-cv-1343 (SRU) |

**INITIAL REVIEW ORDER**

Donald G. Raynor, Jr., currently confined at MacDougall-Walker Correctional Institution in Suffield, Connecticut and proceeding *pro se*, filed the instant complaint under 42 U.S.C. § 1983 against eleven defendants: Dr. Ingrid Feder, RN/CNS Kara J. Phillips, RN/ARC Janine M. Brennan, APRN Mallory Muzykoski,[1] LPN/ARC Julie A. Leschinsky, Karolina Leonardziak, Lieutenant Green, Jane Doe Department of Correction ("DOC") Medical Director Supervisor, John Doe DOC Medical Director, Jane Doe Head Medical Supervisor at Corrigan-Radgowski Correctional Center, and John Doe Head Supervisor of DOC Medical Transport. Raynor principally claims that the defendants were deliberately indifferent to his medical needs, and seeks damages and injunctive relief in the defendants' individual and official capacities.

**I.      Standard of Review**

Under 28 U.S.C. § 1915A, I must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b). Although detailed allegations are not required, the complaint must

---

[1] Although the complaint refers to this defendant as Nurse Mazykosky, the medical records appended to the complaint indicate that the correct spelling of the defendant's last name is Muzykoski. *See* Compl., Doc. No. 1, at 48. I therefore refer to the defendant as Nurse Muzykoski throughout the initial review order.

include enough facts to afford the defendants fair notice of the claims and the grounds upon which they are based. *See Bell Atlantic v. Twombly*, 550 U.S. 544, 555–56 (2007). In addition, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Conclusory allegations will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Nevertheless, it is well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude afforded to *pro se* litigants).

## II.     Allegations[2]

Over the past seven years, Raynor has been confined at Garner Correctional Institution, Corrigan-Radgowski Correctional Center ("Corrigan"), and his current facility, MacDougall-Walker Correctional Institution. *See* Compl., Doc. No. 1, at ¶ 1. Raynor suffers from Chronic Shoulder Instability ("CSI") in both shoulders, and has complained about shoulder pain and frequent dislocation to "numerous DOC staff, employee, and medical staff" at all three facilities over the past three years. *Id.* at ¶¶ 2–4. All named defendants work at Corrigan.

Dr. Mazzocca[3] diagnosed Raynor with CSI with 40% bone loss at UConn Health Center in late 2016. *Id.* at ¶¶ 6, 42. On or around July 16, 2017, Raynor underwent surgery to correct

---

[2] The facts are drawn from the complaint and accompanying exhibits, and I assume them to be true and draw all reasonable inferences in Raynor's favor. *See Ashcroft*, 556 U.S. at 678–79.

[3] Although Raynor refers to this physician as Dr. Mazzaca throughout his complaint, the submitted medical records indicate that the correct spelling of his name is Dr. Mazzocca. *See* Doc. No. 1, at 35. I therefore refer to the physician as Dr. Mazzocca throughout the initial review order.

the dislocation of his right shoulder. *See id.* at ¶¶ 8, 43. At that time, Dr. Mazzocca recommended an MRI and CT scan of Raynor's left shoulder. *See id.* at ¶¶ 8, 44.

During intake at Corrigan on June 14, 2018, Raynor informed the nurse of his CSI, the surgery on his right shoulder, and his pending appointments relating to his left shoulder, as well as his ongoing pain in both shoulders. *Id.* at ¶ 17. Two months later, in August 2018, the tests recommended by Dr. Mazzocca were finally performed and revealed that Raynor required corrective surgery on his left shoulder. *See id.* at ¶¶ 48–49.

In November 2018, Raynor was seen by Lechinsky for a follow-up telephone conference with Dr. Mazzocca, at which time Dr. Mazzocca again diagnosed Raynor with CSI in his left shoulder and recommended corrective surgery for that shoulder. *See id*. at ¶ 49. Eight months later, on June 9, 2019, Raynor submitted a medical request, explaining that he was diagnosed with CSI and that he was due to undergo surgery. *See id.* at ¶ 54. Leschinsky responded the following day, stating that the approval was still pending but that she would seek an update. *Id.*

On July 22, 2019, Raynor submitted a second request to the medical supervisor, indicating that one month had passed since his last inquiry about the status of his surgery. *See id.* at ¶ 55. Phillips responded that his appointment was "in process" but that she could not tell him the exact date. *Id.* On September 18, 2019, Raynor filed a medical grievance, reiterating that he was diagnosed with CSI for his left shoulder and that Dr. Mazzocca had recommended surgery; Brennan replied that they "cannot control the wait time." *Id.* at ¶ 57, p. 33. While awaiting the surgery, Raynor suffered from multiple shoulder dislocations, severe pain, and limited mobility. *See id*. at ¶¶ 10–11, 46–67. Raynor finally underwent surgery on his left shoulder on October 1, 2019. *Id.* at ¶ 58.

Despite his repeated requests, Raynor was also denied physical therapy following both surgeries. *See id.* at ¶¶ 12–15. On November 14, 2019, Leonardziak participated in a teleconference with Raynor and Dr. Mazzocca, which appeared to concern Dr. Mazzocca's order for physical therapy. *See id.* at ¶ 65, p. 43–44. Moreover, in an inmate request dated February 4, 2020, Raynor stated that Dr. Feder had recommended physical therapy after the second surgery. *See id.* at ¶ 67, p. 46.

On February 24, 2020, Raynor submitted a request noting that he continued to experience severe pain in his shoulder; Phillips thereafter placed Raynor on the sick call list. *See id.* at ¶ 68. On March 9, 2020, Raynor filed a request seeking examination by a doctor, flagging that his shoulder was becoming numb and making it difficult to sleep. *See id.* at ¶ 71. On March 18, 2020, Leschinsky visited Raynor's cell to evaluate Raynor's shoulder and instructed him to discontinue his self-physical therapy, which caused his shoulder to calcify and limited his range of motion. *See id.* at 61 ¶ 8. On March 24, 2020, Muzykoski reviewed Raynor's x-ray test results and recommended a follow-up with an orthopedist due to the "clicking." *See id.* ¶ 72, p. 51.

On March 27, 2020, Raynor filed a medical grievance discussing the year-long delay in receiving the second surgery and the lack of physical therapy. *See id.* at ¶ 73. Raynor also requested a therapeutic mattress. *See id.* Two days later, on March 29, 2020, Raynor sent a request to Lieutenant Green again seeking a therapeutic mattress, citing the CSI diagnosis, the recent surgery on his left shoulder, and his unrelenting pain and difficulty sleeping. *See id.* at ¶ 74. On April 30, 2020, after 15 business days passed with no response from Green, Raynor filed a grievance. *See id.* at ¶ 76. On May 8, 2020, Raynor filed a grievance appeal, contending that

other prisoners with similar conditions have therapeutic mattresses; that appeal was denied. *See id.* at ¶ 78.

Raynor has endured extreme pain, including in his shoulders while lying on his back from pressure and stiffness, which he attributes to the lack of physical therapy. *See id.* at ¶¶ 18, 19. His arm frequently locks at the shoulder, resulting in a loss of mobility and pain. *Id.* at ¶ 20. In addition, Raynor must sleep with his arm hanging off the bunk. *See id.* at ¶ 21. He cannot lie on his stomach, scratch his right shoulder with his left arm, shower, or practice his Muslim faith without experiencing pain. *See id.* at ¶¶ 22–26. Raynor notified Dr. Feder and nurses Phillips, Muzykoski, Brennan, and Leschinsky that he cannot perform daily activities without painfully dislocating his shoulders on numerous occasions; his medical records also note such limitations. *See id.* at ¶ 50.

### III. Discussion

Raynor asserts seven claims in his complaint: (1) violation of the Equal Protection Clause of the Fourteenth Amendment; (2) "deliberate indifference to safety" under the Eighth Amendment; (3) "cruel and unusual punishment" under the Eighth Amendment; (4) unconstitutional conditions of confinement under the Eighth Amendment; (5) "excessive risk to [his] medical need, condition, and improper medical supervision" under the Eighth Amendment; (6) "discrimination of class one" under the Eighth Amendment; and (7) "deprivation of due process to medical attention." *See* Compl., Doc. No. 1, at 19–20.

I construe the foregoing claims as the following three causes of action: (1) a Fourteenth Amendment equal protection class-of-one claim; (2) an Eighth Amendment claim for deliberate indifference to serious medical needs against Dr. Feder, Phillips, Brennan, Muzykoski, Leschinsky, Leonardziak, Jane Doe DOC Medical Director Supervisor, John Doe DOC Medical

5

Director, Jane Doe Head Medical Supervisor at Corrigan, and John Doe Head Supervisor of DOC Medical Transport; and (3) an Eighth Amendment claim for unconstitutional conditions of confinement against Lieutenant Green. I address each claim in turn.

      A.      <u>Equal Protection Claim</u>

The Equal Protection Clause of the Fourteenth Amendment protects individuals from arbitrary or invidious discrimination. *See City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 446 (1985). It does not mandate identical treatment for each individual or group of individuals; instead, it requires that "all similarly situated persons should be treated alike." *See id.* at 439.

In order to state an equal protection claim, a plaintiff must establish "purposeful discrimination . . . directed at an identifiable or suspect class." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (internal citations omitted) (citation omitted). In particular, Raynor must allege facts showing that: (1) he was treated differently from "similarly situated" individuals; and (2) the difference in treatment was "based on impermissible considerations such as race [or] religion." *See Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (citation omitted).

As an alternative to alleging class-based discrimination, Raynor may pursue his equal protection claim based on allegations that he has been irrationally singled out as a "class of one." *See Enquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 601 (2008). To state a claim under the class-of-one theory, Raynor "must show an extremely high degree of similarity between [himself] and the persons to whom [he] compare[s himself]." *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) (citation omitted). Raynor must specifically establish that: "(i) no rational person could regard the circumstances of the plaintiff to differ

6

from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." *Id.* (citations omitted).

In this case, even when construing the complaint liberally, Raynor pleads no facts suggesting discrimination based on his membership in a protected class or based on any other impermissible consideration. Raynor, therefore, has failed to state a plausible traditional equal protection claim.

Raynor has also failed to state a colorable class-of-one equal protection claim. Although he alleges that other prisoners with similar conditions have therapeutic mattresses, he does not proffer any details regarding those individuals or their conditions. Raynor has thus failed to plead an "extremely high" level of similarity between him and the persons with whom he compares himself, as is necessary to state a class-of-one equal protection claim. *See Ruston*, 610 F.3d at 59; *see also Webb v. Arnone*, 2018 WL 3651333, at *5 (D. Conn. Aug. 1, 2018) (holding that the plaintiff did not state a plausible class-of-one equal protection claim when he failed to articulate any "facts to show that he was essentially identical to the other former death row inmates who are no longer subject to the out-of-cell restraint policy").

For the foregoing reasons, the equal protection claims are **dismissed without prejudice** pursuant to 28 U.S.C. § 1915A(b)(1). Raynor may amend his complaint to reassert his equal protection claim if he can allege facts identifying the prisoners who received a therapeutic mattress, showing the required level of similarity to those individuals, and identifying a proper defendant for the claim.

A. <u>Eighth Amendment Claims Against Feder, Phillips, Brennan, Muzykoski, Leschinsky, Leonardziak, and Jane and John Does</u>

The Eighth Amendment forbids deliberate indifference to prisoners' serious medical needs. *See Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013). To state a deliberate indifference claim, Raynor must allege both that his need was serious and that the defendants acted with a sufficiently culpable state of mind. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003). The standard embodies both an objective and subjective element. *See id*. at 183. To meet the objective element, the alleged deprivation of adequate medical care must be "sufficiently serious." *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (citation omitted). That inquiry "requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *See Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006).

Where the defendants allegedly failed to provide any treatment for a prisoner's medical condition, the focus of the court's inquiry is whether the medical condition is sufficiently serious. *See id*. The Second Circuit has delineated several factors that are "highly relevant" to that question, including "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (citation omitted). In addition, a sufficiently serious medical condition exists when, if left untreated or neglected for a long period of time, it could "result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136–37 (2d Cir. 2000) (citation omitted).

Where, on the other hand, the defendants allegedly provided medical treatment that was inadequate, the objective inquiry is narrower. *See Salahuddin*, 467 F.3d at 280. For instance, if

8

the prisoner is receiving ongoing medical care and there was an "unreasonable delay or interruption in that treatment," the inquiry focuses on "the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone." *Id.* (citation omitted).

To meet the subjective element, the defendants must have been "subjectively reckless"—that is, they must have been aware that the prisoner faced a substantial risk to his or her health or safety and disregarded that risk. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Spavone*, 719 F.3d at 138. The defendants "need only be aware of the risk of harm, not intend harm," and "awareness may be proven 'from the very fact that the risk was obvious.'" *Spavone*, 719 F.3d at 138 (quoting *Farmer*, 511 U.S. at 842). Such recklessness entails more than mere negligence, *Salahuddin*, 467 F.3d at 279–80, and "an official's failure to alleviate a significant risk that he should have perceived but did not" does not constitute deliberate indifference, *see Farmer*, 511 U.S. at 838. A disagreement over a choice of treatment provided also does not establish deliberate indifference. *See Wright v. Rao*, 622 F. App'x 46, 47 (2d Cir. 2015); *accord Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011) ("It has long been the rule that a prisoner does not have the right to choose his medical treatment as long as he receives adequate treatment.").

In his complaint, Raynor alleges that he suffers from chronic shoulder instability in both shoulders, a condition that has engendered extreme and ongoing pain. He further alleges that, although a MRI and CT scan of his left shoulder was medically recommended in July 2017 in order to evaluate whether corrective surgery was required, it was not until one year later, in August 2018, that the tests were performed, which confirmed that Raynor needed the surgery. According to the complaint, it took an additional year, until October 1, 2019, for Raynor to finally receive the surgery, and while waiting for that surgery, Raynor suffered from multiple shoulder dislocations, severe pain, and limited mobility. Moreover, the complaint asserts that

Raynor has yet to receive physical therapy, against the recommendations of his doctors, and that he continues to experience extreme pain as a result.

Considering those allegations, and drawing all reasonable inferences in favor of Raynor, Raynor has pled the existence of a sufficiently serious deprivation of medical care. *See Johnson v. Wright*, 412 F.3d 398, 404 (2d Cir. 2005) ("[A] deliberate indifference claim can lie where prison officials deliberately ignore the medical recommendations of a prisoner's treating physicians"). I therefore conclude that Raynor has adequately established the objective element of the deliberate indifference test.

With respect to the subjective element, the complaint plausibly attributes culpable intent to Dr. Feder, nurses Phillips, Brennan, Muzykoski, and Leschinsky, and health care worker Leonardziak. In particular, according to the complaint and accompanying exhibits, Leschinsky, Brennan, and Philips responded to Raynor's medical requests that flagged that he was due to undergo surgery. Further, Leschinsky saw Raynor for a follow-up telephone conference with Dr. Mazzocca, during which Dr. Mazzocca recommended corrective surgery. Moreover, Muzykoski recommended a follow-up appointment with an orthopedist after reviewing Raynor's x-ray test results; Dr. Feder recommended physical therapy; and Leonardziak participated in a teleconference with Dr. Mazzocca following the surgery, which appeared to concern an order for physical therapy. Raynor also notified Dr. Feder, Phillips, Brennan, Muzykoski, and Leschinsky numerous times that he could not perform daily activities without painfully dislocating his shoulders.

When viewing the complaint liberally, the foregoing allegations raise a reasonable inference that Dr. Feder, Phillips, Brennan, Muzykoski, Leschinsky, and Leonardziak were aware of a substantial risk that the failure to schedule Raynor's surgery in a timely manner, to

provide Raynor with physical therapy, or to otherwise treat Raynor's CSI, would and did cause Raynor serious harm. The complaint further suggests that they disregarded that risk by neglecting to promptly schedule his surgery, to facilitate physical therapy, or to otherwise treat his condition. Those allegations are, in my view, sufficient for the deliberate indifference claim to proceed for further development of the record.

The allegations against Jane Doe DOC Medical Director Supervisor, John Doe DOC Medical Director, Jane Doe Head Medical Supervisor at Corrigan, and John Doe Head Supervisor of DOC Medical Transport, however, are insufficient. The complaint does not set forth any specific allegations against those defendants; the conclusory assertions that the DOC had knowledge of Raynor's CSI and that the defendants knowingly caused him to endure pain do not suffice. *See Ashcroft*, 556 U.S. at 129 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Likewise, although Raynor alleges that he submitted multiple medical grievances regarding his CSI and that his medical needs were documented in his medical records, the complaint does not indicate that any of the foregoing defendants received the requests or reviewed the medical records. Accordingly, even when drawing all reasonable inferences in Raynor's favor, I cannot conclude that Raynor has satisfied the subjective component of the deliberate indifference test for those defendants.

For the foregoing reasons, the Eighth Amendment claims against Dr. Feder, nurses Phillips, Brennan, Muzykoski, Leschinsky, and health care worker Leonardziak may proceed. The Eighth Amendment claims against Jane Doe DOC Medical Director Supervisor, John Doe DOC Medical Director, Jane Doe Head Medical Supervisor at Corrigan, and John Doe Head

Supervisor of DOC Medical Transport, however, are **dismissed without prejudice** pursuant to 28 U.S.C. § 1915A(b)(1).[4]

      C.      Eighth Amendment Claim Against Green

Raynor also appears to raise an Eighth Amendment conditions of confinement claim against Lieutenant Green for his failure to provide a therapeutic mattress. To prevail on such a claim, Raynor must allege facts supporting an objective element—that "the deprivation [he] suffered was sufficiently serious that he was denied the minimal civilized levels of life's necessities"—and a subjective element—that Green "acted with a sufficiently culpable state of mind, such as deliberate indifference to inmate health or safety." *Washington v. Artus*, 708 F. App'x 705, 708 (2d Cir. 2017) (internal citation omitted).

Regarding the objective requirement, the Supreme Court has explained that states must not deprive prisoners of "basic human needs—*e.g.,* food, clothing, shelter, medical care, and reasonable safety." *Helling v. McKinney*, 509 U.S. 25, 32 (1993) (citation and internal quotation marks omitted). The challenged conditions "must be measured by its severity and duration, not the resulting injury." *Darnell v. Pineiro*, 849 F.3d 17, 32 (2d Cir. 2017). There is no "static test" for determining whether a deprivation is "sufficiently serious;" rather, "the conditions themselves must be evaluated in light of contemporary standards of decency." *Id.* at 30 (citation omitted).

Regarding the subjective requirement, as I noted with respect to Raynor's deliberate indifference to medical needs claim, Raynor must allege that Green knew "of and disregard[ed]

---

[4] I note that, should Raynor seek to replead his Eighth Amendment claims against those defendants, he must plead that they "violated the Eighth Amendment by [their] own conduct, not by reason of [their] supervision of others who committed the violation." *Tangreti v. Bachmann*, 983 F.3d 609, 619 (2d Cir. 2020). Accordingly, Raynor must set forth factual allegations indicating that those defendants themselves "personally knew of and disregarded an excessive risk" to his health or safety. *Id*.

an excessive risk to [his] health or safety"—that is, that he was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and . . . dr[e]w the inference." *Phelps v. Kapnolas*, 308 F.3d 180, 185–86 (2d Cir. 2002) (internal citation omitted); *see also Helling*, 509 U.S. at 32 ("Whether one characterizes the treatment received by [the prisoner] as inhuman conditions of confinement, failure to attend to his medical needs, or a combination of both, it is appropriate to apply the 'deliberate indifference' standard articulated in *Estelle*.") (citation omitted).

In his complaint, Raynor alleges that he experiences extreme pain when lying on his mattress and that he has difficulty sleeping. *See* Compl., Doc. No. 1, at ¶¶ 9, 71, 73, 74, p. 60 ¶ 4. The Second Circuit has observed that "sleep is critical to human existence, and conditions that prevent sleep have been held to violate the Eighth Amendment." *See Walker v. Schult*, 717 F.3d 119, 126 (2d Cir. 20123). As the Second Circuit further noted in *Walker*, at least one court in this district has held that "the condition of a prisoner's mattress may be so inadequate as to constitute an unconstitutional deprivation." *Id.* at 127 (discussing *Bell v. Luna*, 856 F. Supp. 2d 388, 397–98 (D. Conn. 2012), which denied a motion to dismiss where a prisoner, for seven months, slept on a mattress that was torn, unstuffed, and smelled like mildew). For those reasons, I conclude that Raynor has sufficiently pled the objective component of his Eighth Amendment claim against Green.

Raynor further alleges that he submitted a request for a therapeutic mattress to Green on March 29, 2020, which explained that he recently received surgery on his left shoulder, endured excruciating pain, and had difficulty sleeping. Because that request was ignored, the complaint plausibly alleges that Green was aware of an excessive risk to Raynor's health and disregarded

13

that risk.  The Eighth Amendment claim against Green will therefore proceed for further development of the record.

## IV.     Conclusion

The Eighth Amendment claim for deliberate indifference to medical needs will proceed against Feder, Phillips, Brennan, Muzykoski, Leschinsky, and Leonardziak, and the conditions of confinement claim will proceed against Green.  The Fourteenth Amendment equal protection claim, as well as the Eighth Amendment claims against Jane Doe DOC Medical Director Supervisor, John Doe DOC Medical Director, Jane Doe Head Medical Supervisor at Corrigan, and John Doe Head Supervisor of DOC Medical Transport, are **DISMISSED** without prejudice under 28 U.S.C. § 1915A(b)(1).

Raynor may file an amended complaint to reassert the equal protection claim if he can allege facts identifying the prisoners who received a therapeutic mattress, showing the required similarity to those individuals, and identifying a proper defendant for the claim.  Raynor may also reassert his Eighth Amendment claims against Jane Doe DOC Medical Director Supervisor, John Doe DOC Medical Director, Jane Doe Head Medical Supervisor at Corrigan, and John Doe Head Supervisor of DOC Medical Transport, if he can set forth factual allegations indicating that those defendants personally knew of and disregarded an excessive risk to his health or safety.

Any amended complaint shall be filed within forty-five days from the date of this order.  In his amended complaint, Raynor shall set forth all claims—including the claims that are proceeding—and all factual allegations underlying those claims.

The court enters the following additional orders.

(1)     **The Clerk shall** verify the current work address for defendants Feder, Phillips, Brennan, Muzykoski, Leschinsky, Leonardziak, and Green with the Department of Correction

Office of Legal Affairs, mail a waiver of service of process request packet containing the Complaint and this Order to each defendant at the address provided within **twenty-one (21) days** of this Order, and report to the court on the status of the waiver request on the thirty-fifth day after mailing.  If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on the defendant in his or her individual capacity and the defendant shall be required to pay the cost of such service.

(2) **The Clerk shall** prepare a summons form and send an official capacity service packet to the U.S. Marshal Service.  The U.S. Marshal is directed to effect service of the Complaint on defendants Feder, Phillips, Brennan, Muzykoski, Leschinsky, Leonardziak, and Green in their official capacities at the Office of the Attorney General, 165 Capitol Avenue, Hartford, CT 06106, within twenty-one (21) days from the date of this order and to file a return of service within thirty (30) days from the date of this order.

(3) T**he Clerk shall** send Raynor a copy of this Order.

(4) **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(5) The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent.  If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above.  They also may include all additional defenses permitted by the Federal Rules.

(6) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order.  Discovery requests need not be filed with the court.

(7) All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(8) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9) If Raynor changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. Raynor must give notice of a new address even if he is incarcerated. Townsend should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Raynor has more than one pending case, he should indicate all the case numbers in the notification of change of address. Raynor should also notify the defendants or the attorney for the defendants of his new address.

(10) Raynor shall utilize the Prisoner Efiling Program when filing documents with the court. Raynor is advised that the Program may be used only to file documents with the court. As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on defendants' counsel by regular mail.

(11) The Clerk shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy to Raynor.

So ordered.

Dated at Bridgeport, Connecticut, this 8th day of February 2021.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge