UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DONALD G. RAYNOR, JR., <br> *Plaintiff*, <br><br> v. <br><br> INGRID FEDER, *et al.*, <br> *Defendants*. | Civil No. 3:20-cv-1343 (SVN) <br><br> September 27, 2023 |

### RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

In this action brought under 42 U.S.C. § 1983, Plaintiff Donald G. Raynor, Jr., a sentenced inmate in the custody of the Connecticut Department of Correction ("DOC"), alleges that Defendants Dr. Ingrid Feder, Registered Nurse ("RN") Kara Phillips, RN Janine Brennan, Licensed Practical Nurse ("LPN") Julie Leschinsky, Lieutenant Greene, and Nurse and Grievance Coordinator Rose Walker failed to provide him adequate medical treatment and a therapeutic mattress in response to his chronic shoulder instability, and failed to appropriately process grievances related to his medical concerns. Defendants have moved for summary judgment, arguing that that Plaintiff's claims fail as a matter of law and that Defendants are otherwise entitled to qualified immunity. For the following reasons, Defendants' motion is GRANTED.

### I.      FACTUAL BACKGROUND

The following facts are primarily taken from the parties' Local Rule 56(a) Statements and

supporting exhibits.[1]  The incidents underlying this action occurred while Plaintiff was confined at Corrigan-Radgowski Correctional Center ("Corrigan").[2]  Defs.' L.R. 56(a)1 St., ECF No. 85-2, ¶ 6.

### A. Medical Defendants (Dr. Feder and Nurses Phillips, Brennan, and Leschinsky)

The Court will refer to Dr. Feder and Nurses Phillips, Brennan, and Leschinsky as the "Medical Defendants."

The Connecticut DOC partnered with the UConn Health Center ("UConn") to provide specialized healthcare for incarcerated individuals.  *See* Pl.'s Ex. D-1, ECF No. 95 at 82; Pl's. Ex. D-2, ECF No. 95 at 84.  Through this partnership, DOC facilities may issue referrals for individuals to have specialty appointments scheduled at UConn; but the DOC facilities cannot themselves actually schedule the appointments.  *Id.*  On October 1, 2019,[3] Plaintiff underwent surgery on his left shoulder at UConn with non-defendant Dr. Mazzocca.  Pl's. Ex. F, ECF No. 86 at 1.

Defendant Dr. Feder, who began working as a part-time physician at Corrigan in September 2019, Defs.' L.R. 56(a)1 St. ¶ 7, only had one substantive encounter with Plaintiff:  on January 6,

---

[1] In response to five statements of material fact Defendants claim are undisputed, Plaintiff generally denies the fact but does not cite to any admissible evidence; rather, he "leaves defendants to their evidence" or "proof," or cites to other portions of Defendants' Local Rule 56(a)1 statement. Pl.'s L.R. 56(a)2 St., ECF No. 95 ¶¶ 8, 9, 17–18, 20.  As Plaintiff was instructed of the requirement to cite admissible evidence to support each denial in his Local Rule 56(a)2 Statement, but has failed to do so, the Court will deem those facts set forth in Defendants' Local Rule 56(a)1 Statement admitted where they are supported by evidence.  *See* D. Conn. L. Civ. R. 56(a)1 ("Each material fact set forth in the Local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted . . . unless such fact is controverted by the Local Rule 56(a)2 Statement . . . ."); *see also Pierre v. City of New York*, 531 F.Supp.3d 620, 623 n.1 (E.D.N.Y. 2021) ("Facts that are not contradicted by citations to admissible evidence are deemed admitted.").  The Court will also not consider any facts supported only by Plaintiff's conclusory statements in the affidavit he filed in opposition to Defendants' motion for summary judgment.  *See* Pl.'s Ex. L, ECF No. 95 at 107–17; *Zigmund v. Foster*, 106 F.Supp.2d 352, 356 (D. Conn. 2000) (recognizing that "[a]n affidavit in which the plaintiff merely restates the conclusory allegations of the complaint and denies the truth of the affidavits filed by the defendants is insufficient to create an issue of fact that would make summary judgment inappropriate").
[2] Although Plaintiff alleges in his amended complaint that his claims relate to his confinement at Corrigan and Garner Correctional Institution, Am. Compl., ECF No. 25 at 2, he only names as Defendants persons working at Corrigan. Thus, the only claims relevant to his action involve incidents occurring at Corrigan.
[3] Although this exhibit says the "[s]urgery was done 10/1/20," this appears to be a typographical error, as the medical form is dated March 18, 2020, and therefore predates October 1, 2020.  *See* Defs.' Ex. F, ECF No. 86 at 1.  The parties do not dispute that the surgery was on October 1, 2019.

2020, she met with Plaintiff, and requested a follow-up physical therapy appointment for Plaintiff at UConn by entering a note in his chart. *Id.* ¶¶ 9, 11. Dr. Feder could only request specialty appointments at UConn by making notes in patients' charts; she could not actually make appointments or coordinate scheduling with UConn. *Id.* ¶ 10.

During the relevant time period, Defendant Phillips was a nursing supervisor at Corrigan. *Id.* ¶ 12. Her role was administrative: she dealt with payroll, scheduling the nurses, ordering supplies, touring the facility, and supervising nurses; she did not provide direct patient care. *Id.* ¶ 13. Occasionally, however, Phillips would cover for nursing staff when the facility was short on nursing coverage, especially during the pandemic. *Id.* ¶ 14. On these occasions, Phillips would provide direct patient care. *Id.*

As a nurse, Phillips does not have authority to overrule medical decisions or orders made by the doctors and Advanced Practice Registered Nurses ("APRNs"). Defs.' L.R. 56(a)1 St. ¶ 15. She carried out the orders and decisions of the doctors and APRNs regarding patient care, but she did not issue such orders. *Id.* In her role as a nursing supervisor, Phillips also lacked authority to direct doctors regarding what medical decisions they should make or what care they should provide to inmates. *Id.* ¶ 16. Nor did Phillips have control over scheduling specialty visits to UConn, such as for physical therapy. *Id.* ¶ 17. She is not involved with scheduling or coordinating appointments or surgery dates with UConn. *Id.* ¶¶ 18–19. Phillips met Plaintiff on October 20, 2019, while she was covering a shift for a registered nurse. *Id.* ¶ 21. She checked on Plaintiff following his shoulder surgery and noted that he appeared to be sleeping for most of the shift and did not complain about any acute issues. *Id.* The only other meeting was during a sick call request on February 26, 2020, "concerning a request by [Plaintiff] for a new mattress," during which Plaintiff

sought treatment for serious shoulder pain. *Id.* ¶ 22.[4] After that meeting, Phillips referred Plaintiff to be seen for a Nurse Sick Call. *Id.*; *see also* Pl's. Ex. H, ECF No. 95 at 90 (stating that Phillips "[a]dded new Test order of On Site Referral – Nurse Sick Call").

Defendant Brennan is a registered nurse who has served as the Health Services Review Coordinator at Corrigan since 2015. Defs.' L.R. 56(a)1 St. ¶ 24. She does not provide patient care in this role. *Id.* ¶¶ 24, 26. Instead, she maintains records of inmate health services remedies ("HSRs"), as well as the Corrigan Health Services Administrative Remedy Log, which lists all HSRs filed at Corrigan. *Id.* ¶ 25. Brennan has no authority to overrule medical decisions and orders of the doctors, APRNs, or medical administrators. *Id.* ¶ 27. She cannot dictate medical care to the doctors or APRNs, and has no involvement in or control over scheduling specialty appointments or surgery dates. *Id.* ¶¶ 28–30.

The only interaction Brennan had with Plaintiff was responding to any HSR he may have filed. *Id.* ¶ 31. The record contains evidence of one such interaction. On September 8, 2019, Plaintiff submitted an HSR describing a near year-long delay since signing paperwork for shoulder surgery in November 2018, and stating "[he] would like an imminent trip to UConn for surgery" due to "unnecessary pain & suffering." Pl.'s Ex. V, ECF No. 95 at 214. Brennan responded the next day that the request was "rejected" with the stated reason that "[a]t the facility level, all we can do is request the appointment. Cannot control the wait time." *Id.*

Last, Defendant Leschinsky was an LPN assigned to Corrigan between June 2018 and April 2021.[5] Defs.' L.R. 56(a)1 St. ¶ 32. She carried out orders for medical care issued by doctors

---

[4] Although it is undisputed this appointment "concerned a request by [Plaintiff] for a new mattress," there is no evidence of a formal or written request by Plaintiff in the record.

[5] Although Defendants state that Leschinsky was an LPN between June 2018 and April 2021 and Leschinsky repeats that status in her declaration, Leschinsky Decl., ECF No. 85-7 ¶ 4, they have submitted copies of several of Plaintiff's medical records, one of which was signed by "RN" Leschinsky on March 18, 2020. *See* Defs.' Ex. F, ECF No. 86 at 1. As Leschinsky's status as an LPN versus RN is not material to the arguments presented here, the Court need not resolve this issue.

4

and APRNs; she had no authority to issue orders for patient care or to override orders and decisions of the doctors, APRNs, and medical administrators. *Id.* ¶ 33. She also had no control over scheduling specialty appointments or surgery dates. *Id.* ¶¶ 35–36. Leschinsky had two encounters with Plaintiff: on November 1, 2018, when she submitted a request for surgery after Plaintiff had a telemedicine appointment with Dr. Mazzocca, Pl.'s Ex. N, ECF No. 95 at 141, and on March 18, 2020, when she noted that APRN Muzkowski had instructed her to submit a follow-up Utilization Review Request with Dr. Mazzocca regarding Plaintiff's complaints that his left shoulder was rubbing and clicking, Defs.' L.R. 56(a)1 St. ¶ 38.

Phillips, Brennan, and Leschinsky all understood that Plaintiff's medical needs were being addressed by his physicians and APRNs, who were making all medical decisions regarding his care following his October 1, 2019, surgery. *Id.* ¶ 39.

### B. Non-Medical Defendants (Greene and Walker)

Greene was a Lieutenant at Corrigan from June 7, 2019, until October 7, 2021. Defs.' L.R. 56(a)1 St. ¶ 40. Greene now attests that he did not receive any correspondence from Plaintiff concerning a therapeutic mattress, *id.* ¶ 41, though in discovery responses he stated that he *did not recall* receiving such correspondence, Pl.'s Ex. P, ECF No. 95 at 167 (Greene Req. for Admis. ¶ 29). Greene did, however, "recall conversations concerning the topic." *Id.* ¶¶ 29–30.

Greene avers that, if he had received a request for a special mattress, he would have informed Plaintiff that his mattress could be replaced pursuant to the DOC's mattress exchange policy. Defs.' L.R. 56(a)1 St. ¶¶ 46–47. When an inmate submits a written request to unit staff seeking to exchange his mattress, unit staff forwards the request to Greene and the deputy warden for approval. *Id.* ¶ 47. Once approved, property staff would then call the inmate for a mattress exchange. *Id.* As Plaintiff's request would have concerned a medical issue, Greene would have

deferred to medical staff to determine whether the mattress was medically necessary. *Id.* ¶ 43. Medical staff never informed Greene that Plaintiff required a special mattress. *Id.* ¶ 45.

Walker is a nurse and grievance coordinator at Corrigan. Am. Compl., ECF No. 25 ¶ 41. Plaintiff alleges she mishandled grievances he filed related to his medical treatment. Pl.'s Add'l Mat. Facts, ECF No. 95 ¶¶ 31–34; ECF No. 25 ¶¶ 101–04. Specifically, Plaintiff alleges Walker "called [Plaintiff] trying to convince him to drop his two grievances" and "hid[ ] and delay[ed] responses to [his] grievances." ECF No. 25 ¶¶ 102–03.

## II.    PROCEDURAL BACKGROUND

On September 9, 2020, Plaintiff initiated the present action by filing a *pro se* complaint pursuant to 42 U.S.C. § 1983 against eleven defendants. He brought seven "claims" under the Eighth and Fourteenth Amendments. In the Initial Review Order, the Court (Underhill, J.), construed Plaintiff's claims as three separate causes of action: (1) a Fourteenth Amendment class-of-one claim; (2) an Eighth Amendment claim for deliberate indifference to medical needs against the medical defendants; and (3) an Eighth Amendment claim for unconstitutional conditions of confinement against non-medical defendant, Greene. Initial Review Order, ECF No. 8 at 5. The Court dismissed the Fourteenth Amendment claim without prejudice should Plaintiff "allege facts identifying prisoners who received a therapeutic mattress, showing the level of similarity of to those individuals, and identifying a proper defendant for the claim." *Id.* at 7. He allowed the deliberate-indifference Eighth Amendment claim to proceed against Dr. Feder, Phillips, Brennan, Leschinsky, and two other Defendants who were later dismissed from this action. *Id.* at 11–12; ECF No. 75. Last, he allowed the conditions of confinement Eighth Amendment claim to proceed against Greene. *Id.* at 14.

Plaintiff then filed the operative amended complaint, ECF No. 25. He brings nine claims

which the Court construes as four separate causes of action: the same (1) Fourteenth Amendment class-of-one claim that was previously dismissed; (2) an Eighth Amendment claim for deliberate indifference to medical needs against the Medical Defendants; (3) an Eighth Amendment claim for unconstitutional conditions of confinement against Defendant Greene; and (4) a new First Amendment access to courts claim against Walker.  The Court finds that Plaintiff failed to allege new facts demonstrating a plausible Fourteenth Amendment class-of-one claim, as required by the Initial Review Order.  That claim is therefore dismissed, and the Court will address Defendants' summary judgment motion directed at his Eighth Amendment and First Amendment claims.

### III.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A disputed fact is material only where the determination of the fact might affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  With respect to genuineness, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden of establishing there is no genuine issue of material fact in dispute will be satisfied if the movant can point to an absence of evidence to support an essential element of the non-moving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  The movant bears an initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence

of a genuine issue of material fact." *Id.* at 323. A movant, however, "need not prove a negative when it moves for summary judgment on an issue that the [non-movant] must prove at trial. It need only point to an absence of proof on [the non-movant's] part, and, at that point, [the non-movant] must 'designate specific facts showing that there is a genuine issue for trial.'" *Parker v. Sony Pictures Ent., Inc.*, 260 F.3d 100, 111 (2d Cir. 2001) (quoting *Celotex Corp.*, 477 U.S. at 324). The non-moving party, in order to defeat summary judgment, must come forward with evidence that would be sufficient to support a jury verdict in his or her favor. *Anderson*, 477 U.S. at 249. If the non-movant fails "to make a sufficient showing on an essential element of [their] case with respect to which [they have] the burden of proof," then the movant will be entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323.

In considering a motion for summary judgment, a court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021) (citation and internal quotation marks omitted). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991).

Moreover, the Court bears in mind that a *pro se* litigant's filings must be liberally construed to raise the strongest arguments they suggest. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013); *see also Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010) (collecting cases regarding the "special solicitude" afforded to *pro se* litigants). Although the Court affords *pro se* litigants special solicitude, it remains the case that "unsupported allegations do not create a material issue of fact" and do not overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

### III. DISCUSSION

Plaintiff brings Eighth Amendment claims against Dr. Feder, Phillips, Brennan, Leschinsky, and Greene, and a First Amendment claim for interference with access to the courts against Walker. Specifically, under the Eighth Amendment, Plaintiff contends that Defendants' failure to ensure the prompt scheduling of specialty appointments at UConn and failure to provide a therapeutic mattress constitute deliberate indifference to medical needs (as to the Medical Defendants), and that the failure to provide a therapeutic mattress constitutes cruel and unusual conditions of confinement (as to Greene). Under the First Amendment, Plaintiff contends that Walker inhibited his access to the courts by improperly handling grievances he filed.

Defendants now move for summary judgment of all claims on two grounds: that Plaintiff's claims fail as a matter of law, and that Defendants are otherwise entitled to qualified immunity. For the reasons elaborated upon below, the Court finds that each of Plaintiff's claims are without merit, and so grants summary judgment in favor of Defendants as a matter of law without deciding whether Defendants are entitled to qualified immunity.

#### A. Deliberate Indifference to Medical Needs (Medical Defendants)

Plaintiff contends that the Medical Defendants (Dr. Feder, Phillips, Brennan, and Leschinsky) were deliberately indifferent to his medical needs in two ways: they failed to promptly schedule his physical therapy and surgery appointments, and they failed to provide him a therapeutic mattress.

To establish an Eighth Amendment claim regarding inadequate medical treatment, Plaintiff must present evidence "showing the offending official's 'deliberate indifference to [his] serious medical needs.'" *Thomas v. Wolf*, 832 F. App'x 90, 92 (2d Cir. 2020) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). There are two elements to a claim for deliberate indifference

to medical needs.

The first element is objective. The inmate must "show that he was 'actually deprived of adequate medical care' by an official's failure 'to take reasonable measures in response to a [sufficiently serious] medical condition.'" *Id.* (brackets in original) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006)). Establishing an objectively serious deprivation requires the court to make two separate inquiries. First, the court must determine whether the inmate "was actually deprived of adequate medical care." *Salahuddin*, 467 F.3d at 279. The medical providers are only required to have "act[ed] reasonably." *Id.* (internal quotation marks and citation omitted). The second inquiry requires the court to determine "whether the inadequacy in medical care is sufficiently serious," which "requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Id.* at 280.

A "sufficiently serious" deprivation can exist if the plaintiff suffers from an urgent medical condition that can cause death, degeneration, or extreme or chronic pain. *See Brock v. Wright*, 315 F.3d 158, 162–63 (2d Cir. 2003); *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). A medical condition may not initially be serious, but may become serious because it is degenerative and, if left untreated or neglected for a long period of time, will "result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)). The Second Circuit has identified several factors that are "highly relevant" to the question of whether a medical condition is sufficiently serious, including "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects the individual's daily activities; or the existence of chronic and substantial

pain." *Chance*, 143 F.3d at 702(internal quotation marks and citation omitted). Courts also distinguish claims for denial of treatment from those for delay in treatment. *See Benjamin v. Pillai*, 794 F. App'x 8, 11 (2d Cir. 2019). Specifically, if the prisoner is receiving ongoing treatment and the offending conduct is an unreasonable delay or interruption in that treatment, the seriousness inquiry is narrower, focusing "'on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone.'" *Salahuddin*, 467 F.3d at 280 (quoting *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003)).

The second element of a claim for deliberate indifference to medical needs is subjective. The inmate must show "that the official acted with a culpable state of mind of 'subjective recklessness,' such that the official knew of and consciously disregarded 'an excessive risk to inmate health or safety.'" *Wolf,* 832 F. App'x at 92 (quoting in part *Hill*, 657 F.3d at 122). Where the claim is for a delay in treatment, a prisoner's Eighth Amendment rights are violated only where the defendant "knowingly or intentionally" delayed medical treatment. *See Jimenez v. Sommer*, No. 14-cv-5166 (NSR), 2017 WL 3268859, at *8 (S.D.N.Y. July 28, 2017) (citation omitted). "[T]he Second Circuit has reserved those instances to cases where prison officials deliberately delayed care as a form of punishment, ignored a life-threatening and fast-degenerating condition for three days or delayed major surgery for over two years[.]" *Id*. (citation omitted). Allegations constituting negligence or medical malpractice are insufficient to support an Eighth Amendment deliberate indifference claim. *Id*. (citing *Hathaway*, 99 F.3d at 553); *see also Walker*, 717 F.3d at 125 (stating "mere negligence" is insufficient to state a claim for deliberate indifference).

### 1. *Scheduling Delays*

Plaintiff's first deliberate indifference claim concerns the delays in scheduling physical therapy and surgery appointments at UConn.[6] Plaintiff states that he suffered severe shoulder pain and had difficulty sleeping while waiting to see the physical therapist and for his surgical procedure. Severe shoulder pain, caused by a delay in treatment, is sufficient to raise a material issue of fact as to whether Plaintiff was deprived of a serious medical need. *See Sereika v. Patel*, 411 F. Supp. 2d 397, 406 (S.D.N.Y. 2006). Counter to Defendants' assertion, the existence of shoulder pain is supported by Plaintiff's medical records, which indicate that the shoulder pain was severe enough to warrant surgery and multiple referrals for physical therapy. Even if the pain was only supported by Plaintiff's statements, however, this would still be sufficient to create a material dispute of fact. *See Sereika*, 411 F. Supp. 3d at 406. A reasonable jury could therefore find for Plaintiff on the objective element of his Eighth Amendment claim.

The Court concludes that a reasonable jury could not find for Plaintiff, however, on the subjective element. There is no genuine dispute that no Medical Defendant acted intentionally or recklessly in causing the delay in treatment. *See Wolf,* 832 F. App'x at 92. To this end, all the Medical Defendants have submitted evidence that they were not involved in or responsible for

---

[6] The Medical Defendants contend that, because they had no control over when UConn scheduled appointments, they lack personal involvement in the alleged constitutional violation, which is required to state a Section 1983 claim. *See Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020). *Tangreti* focuses, however, on the liability of supervisors for the acts of their subordinates; as Plaintiff does not advance a claim of supervisory liability against any of the Medical Defendants, *Tangreti* is not squarely on point. *Id.* Rather, the general rule—that a plaintiff must establish that each defendant, through the official's own actions, has violated the Constitution—applies. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Personal involvement, which is a question of fact, may be shown by "direct participation" by the defendant in the conduct allegedly constituting a violation of the plaintiff's rights. *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016). The process of requesting a medical appointment at UConn involves, and usually begins with, an interaction with medical staff at the prison. The Medical Defendants acknowledge that each of them had at least one interaction with Plaintiff concerning his allegations of delayed and/or inadequate medical care, even if they did not bear ultimate responsibility for scheduling his appointments at UConn. The Medical Defendants' direct participation in these acts is sufficient to create a genuine issue of material fact as to their personal involvement. Because Plaintiff's Eighth Amendment claim fails vis-à-vis the Medical Defendants for other reasons, however, the Medical Defendants are entitled to summary judgment.

scheduling and coordinating outside medical appointments. *See* Defs.' L.R. 56(a)1 St. ¶¶ 10 (Dr. Feder), 16–19 (Phillips), 27 (Brennan), 35–36 (Leschinsky). In opposition, Plaintiff presents no contrary evidence. Instead, he cites prison directives generally requiring all medical staff to provide appropriate medical care. *See* Pl.'s L.R. 56(a)2 St. ¶ 45 (citing Pl.'s Ex. O, ECF No. 95 at 146, which states the "DOC shall provide all inmates access to healthcare services that meet community standards"). He also cites to a policy about how correctional facilities in Connecticut request specialty appointments at UConn. *See, e.g.*, *id.* ¶¶ 10, 11, 19 (citing Pl.'s Ex. D-1, No. 95 at 82). But as that policy describes, correctional facilities can only make requests; they cannot actually schedule appointments at UConn. As Brennan informed Plaintiff when "reject[ing]" his HSR, "[a]t the facility level, all we can do is request the appointment. Cannot control the wait time." Pl.'s Ex. V, ECF No. 95 at 214.

Indeed, the evidence Plaintiff submits shows that he was aware as early as April 2022, that an individual named Samantha Lockery, not any named defendant, was the person responsible for scheduling medical appointments outside the facility. *See* Pl.'s Ex. R, ECF No. 95 at 192 (Phillips Interrog. Resp. ¶ 2). Despite this knowledge, Plaintiff persists in pursuing his claims against persons not responsible for scheduling his appointments.

As no Medical Defendant was responsible for scheduling the appointments—or, more specifically, the delay in scheduling appointments—no Medical Defendant displayed the level of disregard required to support the subjective element of a deliberate indifference claim. Indeed, it appears on the instances where Medical Defendants were prompted to making scheduling requests to UConn, they did. *See* Defs.' L.R. 56(a)1 St. ¶¶ 9, 38. Plaintiff's claims against the Medical Defendants can therefore only be that they were negligent or reckless in failing to monitor whether the appointments had been scheduled and, if not, remind the scheduler to do so; but mere

negligence is insufficient to support a constitutional violation. In addition, because each Medical Defendant only interacted with Plaintiff once or twice, and there is no evidence that Plaintiff ever informed them that the delay was causing him severe pain, there is no genuine dispute about whether they were somehow reckless by failing to follow up with those responsible for scheduling appointments. *See Singletary v. Russo*, 377 F. Supp. 3d 175, 193 (E.D.N.Y. 2019) (granting summary judgment despite defendant's failure to follow up with scheduling of specialist appointment because "there is no indication in the record that [defendant] was aware that the appointment with [the specialist] had not been scheduled promptly"); *cf. Lloyd v. Lee*, 570 F. Supp. 2d 556, 569 (S.D.N.Y. 2008) (noting that, when plaintiff repeatedly complains to medical defendant who had referred him to the specialist about a scheduling delay, plaintiff may be able to prove deliberate indifference).

Further, evidence submitted by Plaintiff in this case shows that the delay in scheduling appointments was attributable to the COVID-19 pandemic. Plaintiff attached to his amended complaint a grievance rejected by Brennan on April 28, 2020, and a March 5, 2020, Inmate Request responded to by "Julie," both of which noted that the physical therapy and surgery appointments were delayed because of the COVID-19 pandemic. *See* Pl.'s Ex. D-1, ECF No. 25 at 66; Pl.'s Ex. C-7, ECF No. 25 at 63; *see also Barbosa v. Ndu*, No. 1:21-cv-00251-SAB(PC), 2022 WL 9444217, at *7 (E.D. Cal. Oct. 14, 2022) (granting summary judgment on deliberate indifference claim because "Plaintiff has not alleged facts from which the Court could plausibly infer" COVID-related delays constituted "deliberate indifference as opposed to negligence or [a] reasonable administrative concern"). Thus, to the extent that the delays in treatment Plaintiff experienced were pandemic-related, he also fails to demonstrate deliberate indifference by the Medical Defendants.

*2. Mattress*

Plaintiff's second deliberate indifference claim is that the Medical Defendants failed to provide him with a therapeutic mattress. Like the scheduling of follow-up appointments, there is a genuine dispute as to whether failure to prescribe mattress accommodations in light of a shoulder condition constitutes deprivation of a serious medical need. *See Walker*, 717 F.3d at 127 ("[T]he condition of a prisoner's mattress may be so inadequate as to constitute an unconstitutional deprivation."); *Sherman v. Cook*, No. 3:20-cv-1485 (SRU), 2021 WL 311283, at *7 (D. Conn. Jan. 29, 2011) (collecting cases). Plaintiff offers evidence showing the severity of his shoulder pain, and there is no requirement that Plaintiff actually provide evidence he requested a therapeutic mattress to establish a sufficiently serious medical need. Therefore, there is a genuine dispute with regards to the objective element. But there is no evidence to support that any of the Medical Defendants acted intentionally or recklessly in failing to provide the mattress. Therefore, summary judgment is appropriate on Plaintiff's mattress claim as well.

Here, Brennan, Phillips, and Leschinsky state that, as nurses, they have no authority to prescribe a therapeutic mattress; only a doctor or APRN can do so. *See, e.g.*, Pl.'s Ex. M, ECF No. 95 at 137 (Leschinsky Second Interrog. Resp. ¶ 12). Plaintiff has submitted no contrary evidence.[7] Thus, the only defendant able to have prescribed a therapeutic mattress was Dr. Feder. It is undisputed that Plaintiff met with Dr. Feder only once and that at that visit, she ordered a visit with the physical therapist. Defs.' L.R. 56(a)1 St. ¶ 9. The medical records from this visit do not

---

[7] Defendants' discovery responses conflict, in that Dr. Feder and Brennan denied that "medical" can give therapeutic mattresses to inmates in certain circumstances, while the other Medical Defendants and Greene admit that "medical" can do so. *Compare* Pl.'s Ex. P, ECF No. 95 at 163 (Greene Req. for Admis. ¶ 9), Pl.'s Ex. M, ECF No. 95 at 126 (Leschinsky Req. for Admis. ¶ 9), and Pl.'s Ex. R, ECF No. 95 at 198 (Phillips Req. for Admis. ¶ 9) *with* Pl.'s Ex. Q, ECF No. 95 at 179 (Dr. Feder's Req. for Admis. ¶ 9) and Pl.'s Ex. Y, ECF No. 95 at 226 (Brennan Req. for Admis. ¶ 9). *See* Pl.'s Add'l Mat. Facts, ECF No. 95 at 23–24 ¶ 30. As Plaintiff has submitted no evidence that "medical" includes nurses, as opposed to doctors or APRNs, he has not demonstrated a genuine issue of material fact on this question relevant to Defendants Phillips, Leschinsky, and Brennan.

make mention of a request for a therapeutic mattress, and Dr. Feder did not order one for him. *See* Def's. Ex. F, ECF No. 86 at 3. The medical records also show that Plaintiff was treated by an APRN, but she did not order a therapeutic mattress. *See id.* at 1.

Thus, the record shows only that Plaintiff believed that he needed a therapeutic mattress, not that such a need was ever voiced to a Medical Defendant who would have been able to provide one, nor that such a mattress was medically required. On this record, no reasonable jury could not find that any Medical Defendant acted intentionally or recklessly when they deprived Plaintiff of a serious medical need for a therapeutic mattress. *See Singletary*, 377 F. Supp. 3d at 193. Defendants' motion for summary judgment is therefore granted on the second deliberate indifference claim.

### B. Conditions of Confinement (Greene)

As Greene is not a medical staff member, the Court considers the claim against him for failing to provide a therapeutic mattress as a claim for unconstitutional conditions of confinement.

To establish an Eighth Amendment claim for unconstitutional conditions of confinement, Plaintiff must present evidence supporting a jury finding an objective component—that the deprivation "was sufficiently serious that he was denied the minimal civilized measure of life's necessities"—and a subjective component—that the defendants "acted with a sufficiently culpable state of mind, such as deliberate indifference to inmate health or safety." *Washington v. Artus*, 708 F. App'x 705, 708 (2d Cir. 2017) (summary order) (quoting *Walker*, 717 F.3d at 125).

Under the objective component, there is no "bright line test" to determine whether a risk of serious harm is "substantial" for Eighth Amendment purposes. *Lewis v. Siwicki*, 944 F.3d 427, 432 (2d Cir. 2019). The court must "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone*

16

unwillingly to such a risk," *i.e.*, "the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Helling v. McKinney*, 509 U.S. 25, 36 (1993) (emphasis in original).

To satisfy the subjective component, the plaintiff must show that a defendant knew that he faced a substantial risk to his health or safety and disregarded that risk by failing to take corrective action. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *see also Phelps v. Kapnolas*, 308 F.3d 180, 185–86 (2d Cir. 2002) (explaining how the defendant must have been "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed] and . . . also dr[ew] that inference" (quoting *Farmer*, 511 U.S. at 837)). Defendant's actions must be more than merely negligent. *See Jensen v. Quiros*, No. 3:20-cv-1598(JAM), 2020 WL 6532905, at *1 (D. Conn. Nov. 5, 2020) (describing how defendants must act "with a subjectively reckless state of mind akin to criminal recklessness," not merely carelessly or negligently).

Turning to Plaintiff's claims, courts have found, as noted above, that "the condition of a prisoner's mattress may be so inadequate as to constitute an unconstitutional deprivation." *Walker*, 717 F.3d at 127; *see also Sherman*, 2021 WL 311283, at *7 (collecting cases). Plaintiff has put forth enough evidence to create a genuine dispute of material fact as to whether the objective element is met. *See Sereika*, 411 F. Supp. 2d at 406.[8]

But Plaintiff has failed to show there is a genuine dispute that Greene acted intentionally

---

[8] Like the Medical Defendants, Greene also argues that he cannot be found liable because there is no evidence he had personal involvement in the alleged constitutional violation. Greene is a supervisor, as he was a correctional lieutenant at the relevant time. Def's. L.R. 56(a)1 St. ¶ 40. It is true that a supervisory official's failure to respond to a written complaint does not "without more . . . plausibly allege [that official's] personal involvement for § 1983 purposes." *Jones v. Annucci*, No. 16-CV-3516 (KMK), 2018 WL 910594, at *11 (S.D.N.Y. Feb. 14, 2018) (collecting cases). But here, there is more. In addition to the dispute over whether Greene failed to respond to a complaint Plaintiff claims to have submitted, Greene admits to having a personal conversation with Plaintiff about the therapeutic mattress. Pl.'s Ex. P, ECF No. 95 at 167 (Greene Req. for Admis. ¶¶ 29, 30). This distinguishes Plaintiff's case from one seeking to merely establish supervisory liability, and is sufficient to create a genuine issue of material fact as to Greene's personal involvement. Because Plaintiff's Eighth Amendment claim fails against Greene for other reasons, however, Greene is also entitled to summary judgment.

or recklessly. Plaintiff alleges that he sent an Inmate Request to Greene but did not receive a response. Greene does not recall receiving any correspondence from Plaintiff and Plaintiff submits no evidence showing that the request was made or received. Plaintiff concedes that Defendant Greene never denied any request purportedly sent to him. Even assuming *arguendo* that there is a genuine dispute over whether Plaintiff sent a written request, Greene's failure to respond to a single request by Plaintiff is insufficient to support a jury finding of recklessness. *Cf. Petitpas v. Griffin*, No. 3:20-cv-00769 (JAM), 2020 WL 6826723, at *7 (D. Conn. Nov. 21, 2020) (finding that plaintiff's allegations that defendant failed to respond to, or investigate, a single email falls "far short of the recklessness needed to plead an Eighth Amendment violation").

Although there is no evidence that Plaintiff sent a written request to Greene, Lieutenant Greene did recall "speaking with [Plaintiff] on this matter and providing [Plaintiff] with the information [he] needed to pursue the mattress." *See* Pl.'s Ex. P, ECF No. 95 at 167 (Greene Req. for Admis. ¶ 30). This, too, is insufficient to support a jury finding of recklessness, as Greene helpfully provided Plaintiff with information about how to pursue a therapeutic mattress. Plaintiff further contends that Greene disregarded his duties to investigate Plaintiff's request for a therapeutic mattress, but Plaintiff has cited no evidence in support of the existence of this particular duty to investigate, and, in any event, the evidence reflects that Greene defers to medical staff in determining whether an accommodation, such as a special mattress, is medically necessary. Def's. L.R. 56(a)1 St. ¶ 43; *see also* Pl.'s L.R. 56(a)2 St. ¶ 43. As the Court has already found, there is no evidence in the record that a medical provider determined a therapeutic mattress was medically necessary. In addition, to the extent Plaintiff sought an exchange of his mattress for another regular mattress, Greene has described the mattress exchange policy, which begins with a written request to unit staff, that Greene must then review. Plaintiff has not provided evidence that he made such

a written request, nor that such a request ever reached Greene. On this record, no reasonable jury could conclude that Greene recklessly or intentionally disregarded a risk to Plaintiff's health. Therefore, Plaintiff's conditions of confinement claim fails under the subjective element.

Defendants' motion for summary judgment is therefore granted as to the claim against Greene.

### C. First Amendment Claim (Walker)

Last, Plaintiff contends that Walker interfered with his access to the courts by hiding or delaying grievance responses. ECF No. 25 ¶ 103. "Prisoners have a constitutional right of access to the courts that may not be unreasonably obstructed by the actions of prison officials." *Abrams v. Erfe*, No. 3:17-CV-1570 (CSH), 2018 WL 691714, at *16 (D. Conn. Feb. 2, 2018) (quoting *Baker v. Weir*, No. 16 Civ. 1066 (JAM), 2016 WL 7441064, at *2 (D. Conn. Dec. 27, 2016)); *see also BE & K Const. Co. v. N.L.R.B.*, 536 U.S. 516, 525 (2002) ("We [have] made explicit that the right to petition [the Government for redress of grievances] extends to all departments of the Government, and that the right of access to the courts is but one aspect of the right to petition." (cleaned up)).

The Supreme Court has never held, however, that the Constitution requires prisons to have formal grievance procedures. In *Riddick v. Semple*, 731 F. App'x 11 (2d Cir. 2018) (summary order), the Second Circuit rejected a state prisoner's constitutional claim regarding prison grievance procedures. The court noted that the prisoner's "claim that defendants violated his due process rights by restricting his access to the prison's grievance procedures confuses a state-created procedural entitlement with a constitutional right. However, neither state policies nor 'state statutes . . . create federally protected due process entitlements to specific state-mandated procedures.'" *Id.* at 13 (quoting in part *Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003); *see,*

*e.g., Schlosser v. Manuel*, No. 3:19-cv-1444(SRU), 2020 WL 127700, at *5 (D. Conn. Jan. 10, 2020) (collecting cases stating "[i]nmates have no constitutional entitlement to grievance procedures, to receive a response to a grievance, or to have a grievance properly processed").

As there is no constitutional right to prison grievance procedures, Plaintiff fails to allege a plausible constitutional claim for denial of access to the courts based on Walker's alleged interference with his access to those procedures. *See Lopez v. McGill*, No. 3:08-CV-1931(CSH), 2009 WL 179787, at *6 (D. Conn. Jan. 21, 2009) ("[P]laintiff's claim that the grievance restriction directly limits his First Amendment right to petition the government for redress of grievances fails as a matter of law.").

More fundamentally, as evidenced by this present action, a denial of access to prison grievance procedures did not affect Plaintiff's access to the federal courts. Defendants did not move to dismiss Plaintiff's claims for failing to exhaust grievance procedures, and there is now a motion for summary judgment pending before the Court. Absent additional facts, there is therefore no genuine dispute of material fact that Walker interfered with Plaintiff's access to the courts. Defendants' motion for summary judgment is granted on Plaintiff's claim against Walker as well.

## IV.    CONCLUSION

Defendants' motion for summary judgment is GRANTED. The Clerk is directed to enter judgment and close this case.

**SO ORDERED** this 27th day of September, 2023, at Hartford, Connecticut.

          */s/ Sarala V. Nagala*
          Sarala V. Nagala
          United States District Judge